(No. 13751.—Judgment affirmed.)
THE CITY OF ROCKFORD, Appellee, *vs.* R. J. SCHULTZ,
Appellant.

*Opinion filed February 15, 1921.*

1. STATUTES—*rule of construction where two statutes cannot be harmonized.* Two statutes on the same subject will be so construed, if possible, that each shall have due effect, but if they cannot be harmonized the later act will prevail and will be held to amend or modify the earlier statute rather than to repeal it.

2. SAME—*what may be considered to determine the legislative intent.* The object in construing a statute is to ascertain and give effect to the legislative intent, and to that end the whole act, the law existing prior to its passage, any changes in the law made by the act, and the apparent motive for making such changes, will be weighed and considered.

3. SPECIAL ASSESSMENTS—*act of 1919 relating to use of patented articles modifies section 74 of Local Improvement act.* The act of 1919 permitting the use of patented articles in street or road construction modifies section 74 of the Local Improvement act, under which patented articles could not be specified in asking for bids for a local improvement.

4. SAME—*the act of 1919 relating to use of patented articles in street improvement is not unconstitutional.* The act of 1919 permitting the use of patented articles in street or road construction is intended to secure economy and extend competition and is not invalid, and the city council is allowed a discretion in deciding whether other material equally as good as the patented article can be used, and may provide a specification in the alternative and decide upon the plan after the bids are received.

APPEAL from the County Court of Winnebago county; the Hon. FRED E. CARPENTER, Judge, presiding.

KNIGHT & MOHR, (A. D. EARLY, of counsel,) for appellant.

DAVID D. MADDEN, Corporation Counsel, and WILLIAM D. KNIGHT, City Attorney, (H. S. HICKS, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from the judgment of confirmation in a special assessment proceeding in the county court of Winnebago county, in which the appellant's property was assessed for paving a certain street in the city of Rockford by virtue of an ordinance providing for paving with asphalt pavement on a concrete base or Warrenite bitulithic pavement upon a concrete base. An ordinance was duly passed by the public authorities providing for such pavement, and a special tax was levied in accordance with the ordinance on the property to be benefited by the improvement, together with the proper proof as to publication, posting and mailing of notices. Objections were filed by appellant in the confirmation proceedings on the ground that the assessment was unconstitutional and void. These objections were overruled and judgment of confirmation entered and an appeal taken to this court.

The ordinance in question provided, in the alternative, for an asphalt pavement on a concrete base or for a Warrenite bitulithic pavement upon a concrete base, and specifically provided that the board of local improvements of said city should decide, after the bids were received, which plan should be selected by the board. The specifications for both an asphalt pavement on a concrete base and a Warrenite bitulithic pavement (a patented article) upon the same kind of base are set forth in detail and attached to and made a part of the ordinance.

The principal question to be decided here is the constitutionality of the act passed by the legislature in 1919 providing that any patented article covered by letters patent may be specified and used for constructing and maintaining any proposed public highway, road or street, whether built by the State, county or city, "provided that said specifications are drawn so as to provide for an alternative method or methods of construction so that competition may be had

between different types of materials answering the same general purpose." (Laws of 1919, p. 884.)

The first question raised in the briefs is the force and effect of said act construed with section 74 of the Local Improvement act of this State. The act of 1919 with reference to patented articles does not state that it amends section 74 of the Local Improvement act or refer to it in any way, and it is suggested by appellant that said act does not amend or repeal section 74, for the reason that it does not provide any different general method for local improvements but merely points out that certain kinds of materials heretofore used in local improvements may be used when the ordinance calls for bids so stated, and that the acts are so apparently repugnant that they cannot both stand together. It has always been a maxim in the construction of statutes that where two acts are seemingly repugnant, they should be so construed, if possible, that the later one may not operate as a repeal of the former by implication. In all such cases, if a construction can reasonably be given by which both acts will stand it will be adopted. Under the well settled rules of construction, the latest action of the legislature must be held controlling if the two acts can not be harmonized. (*People* v. *Wabash Railroad Co.* 276 Ill. 92, and cases there cited.) Two acts covering the same subject should be construed, if possible, so that each shall have due effect, and in such case the later act, or the act varying in some degree the requirements necessary to obtain the relief given by the statute, instead of being construed to repeal the former or other act should be held to be an amendment or modification. (*Hacken* v. *Isenberg,* 288 Ill. 589.) Beyond question, the later act of 1919 with reference to patented articles was intended to modify in some degree the provisions of section 74 of the Local Improvement act as construed by this court. In *Siegel* v. *City of Chicago,* 223 Ill. 428, *Village of Rossville* v. *Smith,* 256 id. 302, and *City of Rockford* v. *Armour,* 290 id. 425, it

was held that under section 74 of the Local Improvement
act all contracts for making public improvements will be
paid wholly or in part by special assessment or special tax
and must be left to the lowest bidder and that a patented
article such as was specified in this proceeding could not
be used.

The object in construing a statute is to ascertain and
give effect to the legislative intent, and to that end the
whole act, the law existing prior to its passage, any changes
in the law made by the act, and the apparent motive for
making such changes, will be weighed and considered. (*Peo-
ple* v. *Chicago, Burlington and Quincy Railroad Co.* 290
Ill. 327; *People* v. *Commissioners of Highways,* 270 id.
141.) Before the passage of the act of 1919 the legisla-
ture had passed a joint resolution to investigate the reason
for the prevailing high prices of materials for construct-
ing roads and public improvements, and a committee was
appointed in compliance with the resolution, which made
an investigation and reported, among other things: "The
Illinois law prohibiting the specifying of a patented pave-
ment seriously curtails competition between various types
of pavement. We believe if bids were permitted to be
made on various types of pavement and the State laws
amended to permit bids of such character that competition
would result, which would cause the price for cement pave-
ments to be reduced. We do not make any recommenda-
tions upon this matter but submit to the General Assembly
the advisability of seriously considering the amendment of
the present laws to permit such bids to be made. The
granting of such power by law would not imply an in-
dorsement of any particular class of road construction."
(House Journal, 1919, p. 587.) Subsequently the statute
here in question, with reference to patented pavement, was
passed by the same legislature. We think it is obvious,
taking into consideration the legislation theretofore gov-
erning this question and the decisions with reference to the

296—17

same, that the intention of the legislature in passing this law was plain, and that it intended to modify the provisions of section 74 of the Local Improvement act so as to permit patented articles to be used, under certain conditions, in constructing pavements or street improvements, and under the authorities cited we think it is manifest that the act passed in 1919 as to the use of patented articles modified to that extent section 74 of the Local Improvement act.

This brings us to the consideration of the principal question raised by the briefs,—whether the act of 1919 modifying section 74 of the Local Improvement act is constitutional. On few subjects has there arisen such a contrariety in the decisions as on the question whether patented articles such as are here considered could be used in making street improvements. In many jurisdictions it has been held that even though the statute or the charter of a municipality provides that contracts shall be let on competitive bids, this does not preclude the proper authorities from specifying a patented article or process which may practically preclude, in a large measure, competitive bidding; that if all the competition is permitted of which the situation allows, a patented article or process may be specified. (3 McQuillin on Mun. Corp. sec. 1197, and cases cited.) But it has, perhaps, been more frequently held that this could only be done when there was no provision of the charter or statute restricting the power of the municipality as to letting contracts to the lowest bidder. (2 Dillon on Mun. Corp.—5th ed.—sec. 803.) Without question, before the modification of the Local Improvement act by the act passed in 1919, under the decisions of this court already cited, patented articles could not be specified by municipalities in letting contracts for the construction of local improvements under the Local Improvement act. No question is raised that the authorities in the city of Rockford did not follow the provisions of the act of 1919 in

passing the ordinance and advertising for bids. Is the law as modified by the act of 1919 so as to permit patented articles to be used under certain conditions so obnoxious to the decisions of this court in restricting competition that the new provision must be held unconstitutional?

The legislature in passing the act of 1919 undoubtedly had in mind the same line of reasoning followed by the late Judge Christiancy in *Attorney General* v. *City of Detroit,* 26 Mich. 263, where it was said (p. 276): "When the pavement of a street is in contemplation there are two kinds of competition which it is very desirable to create among those who may wish to undertake the work: First, that between the different kinds of pavement or those prepared to engage in putting them down; and second, that between parties prepared to put down the same kind." The reasoning of the opinion in that case shows clearly that competition, alone, will not give the best results in letting contracts for a public improvement; that something must necessarily be left to the discretion of the public authorities in charge of the work; that they must determine in each case to what extent the nature of the case will permit competition and what is the best method to secure it; that if the public authorities invite proposals for a particular thing or process, they necessarily in so doing exclude everything else which might have been substituted for the thing called for, and that no inflexible rule can be laid down which will always bring the best results; that any attempt to provide specifically by statute, so as to trust nothing to the integrity and discretion of the public authorities, must necessarily work mischief in many cases and might be productive of good in but very few cases; that the right of public authorities to determine the kind of improvement is perhaps more likely to be exercised from dishonest motives than it would be in deciding what bids should be accepted; that if it is lawful to invite competition as to the character of the work, it must also be lawful, in passing upon the bids,

to have regard to the relative value of the kind of work bid for and the rejection of the kind for which the bid is lowest.   In commenting on the reasoning on this subject in a Michigan decision it has been said by a learned author: "The true reason, it is submitted, for the rule upholding municipal authorities in specifying patented material or articles is, that to hold otherwise would defeat the very purpose of the legislative provisions requiring contracts to be let to the lowest responsible bidder after advertisement. The purpose of these provisions is to protect the public interests.   They do this by requiring bids to be advertised for and the contract to be let to the lowest and best or lowest responsible bidder.   But this specific requirement is only incidental to the main purpose of protecting the public interests by securing the best advantages in the way of material and supplies at the lowest practical price.   The authorities may protect the interests of the municipality by refusing to contract for the thing patented if the price asked therefor is unreasonable or prohibitive, and if there is any fraud practiced it will vitiate the contract, the same as it will a contract for an unpatented article.   Consequently, in promoting and protecting the best interests of the municipality it is necessary that the corporate authorities be permitted to specify patented materials or articles when it is clearly to the interest of the municipality to do so, after carefully considering the serviceability and cost of the material or article for which the contract is made. Then, too, it cannot be presumed that a provision to secure competitive bidding was intended to apply where competitive bidding on the thing required is impossible." (3 McQuillin on Mun. Corp. sec. 1197.)

This court in several decisions has heretofore sanctioned the giving of a certain discretion to the public authorities in letting contracts with reference to public improvements. It was held that an asphalt paving ordinance was valid which provided for a foundation of six inches of Portland

cement concrete, made of one part cement, three parts torpedo sand, limestone screenings or other material equal thereto for concrete purposes, and six parts of limestone or other stone equal in quality for concrete purposes. (*City of Chicago* v. *Gage*, 237 Ill. 328.) It was also held that an ordinance for a brick pavement which permitted the board of local improvements to procure Metropolitan block of Canton, Ohio, or other brick equally as good, to be approved by the board of local improvements, dealt with a discretion that was valid and constitutional. (*Village of Oak Park* v. *Galt*, 231 Ill. 365.) The fundamental basis of these decisions is, that some discretion as to details must necessarily be left to the board of local improvements and that some discretion may properly be left to it. (*City of Chicago* v. *LeMoyne*, 243 Ill. 379.) This court has also held that an ordinance for a brick pavement which provided that all brick to be used should be made of pure shale, of quality equal to that found in Galesburg, Glen Carbon and Streator, in this State, and in Canton, Ohio, was sufficiently specific and a valid provision of the ordinance. (*Hintze* v. *City of Elgin*, 186 Ill. 251.) In *Fishburn* v. *City of Chicago*, 171 Ill. 338, under the Local Improvement act as it then stood, an ordinance for a pavement to be constructed by the lowest responsible bidder required cement to be made from asphaltum obtained from Pitch lake, in Trinidad, and evidence was introduced that such lake was owned by a single corporation engaged in manufacturing cement, and that the asphaltum from such lake was not superior to that used by competing cement manufacturers, and this court held that such ordinance, under those conditions, was unconstitutional, but the opinion also stated (p. 343) : "If it be the judgment of the city council that the most suitable and best material to be used in any contemplated improvement is the product of some particular mine or quarry or some substance or compound which is in the control of some particular firm or corporation, the ordinance might be so

framed as to make such production, substance or compound the standard of quality and fitness and to require that material equal in all respects to it should be employed." In *Attorney General* v. *City of Detroit, supra,* it was held that where the council in advertising for bids had done all it could to secure competition for the public benefit, even though in so doing it permitted the use of a patented arti-. cle, the proposals under which bids were received were within the spirit and letter of the law and were valid. In *Whitmore, Rauber & Vicinus* v. *Edgerton,* 149 N. Y. Supp. 508, the court held that the fact that a street is directed to be paved with a patented article does not necessarily prevent competitive bidding, and in *Bye* v. *Atlantic City,* 73 N. J. L. 402, the court said: "A city council has the right to contract for the use of such special or patented pavement· as it may, in the exercise of an honest discretion, find to be the most suitable for the work contemplated." See, also, *Saunders* v. *Iowa City,* 134 Iowa, 132; *Reed* v. *Rackliff-Gibson Construction Co.* 25 Okla. 633; *Fineran* v. *Central Bitulithic Paving Co.* 3 Ann. Cas. 741, and cases cited in note; Elliott on Roads and Streets, (2d ed.) sec. 571.

There can be no question that the legislature, in passing the act of 1919, was intending to secure economy and protect the public from collusive contracts obtained by favoritism or fraud and was trying to promote actual, honest and effectual competition. We think that under this ordinance the city authorities have followed the provisions of the statute, and we cannot say that in so doing they are not properly protecting the interest of the public in obtaining effectual, honest competition in the letting of the contract for this improvement. In so holding we are not going further in allowing discretion to the public authorities than this court has already gone, in effect, in the decisions already cited, in which it has allowed a discretion to the public authorities in deciding whether or not other material equally good could be used in the construction of im-

provements and in such manner as would tend to promote actual, honest and effective competition in the construction of such improvements.

The judgment of the county court will therefore be affirmed.                                        *Judgment affirmed.*