415 Ill. 522 (1953)
114 N.E.2d 698
CECIL ARVIEW and OLD BEN COAL CORPORATION, Plaintiffs in Error,
v.
THE INDUSTRIAL COMMISSION et al.  (WILLIAM G. STRATTON, State Treasurer, Defendant in Error.)
Nos. 32546 and 32549.
Supreme Court of Illinois.
Opinion filed September 24, 1953.
*523 M.J. HANAGAN, of West Frankfort, for plaintiff in error Cecil Arview; ANGERSTEIN & ANGERSTEIN, of Chicago, and WILLIAMS & HARRISON, of Benton, for plaintiff in error Old Ben Coal Corporation.
LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, and JOSEPH R. KERWIN, of counsel,) for defendant in error.
Reversed and remanded.
Mr. JUSTICE BRISTOW delivered the opinion of the court:
This cause is heard on a writ of error to review the judgment of the circuit court of Franklin County, confirming the decision of the Industrial Commission in certain consolidated cases, awarding workmen's compensation to claimant Cecil Arview, payable solely from his employer, the respondent Old Ben Coal Corporation. During the course of the original proceedings before the commission respondent Old Ben Coal Corporation filed a special application for adjustment of claim to make the then State Treasurer and ex-officio custodian of the special fund, William G. Stratton, a party respondent under the provisions of section 8(f) of the Workmen's Compensation Act. (Ill. Rev. Stat. 1947, chap. 48, par. 145(f).) The Industrial Commission did not rule thereon at the original hearing, but on a second hearing, held pursuant to an order of the circuit court remanding the cause, the commission *524 consolidated the cases and the State Treasurer was made a party.
The issue presented herein is a question of law of first impression, and involves the construction and interrelation of the 1925 amendments to sections 7(e), 8(e)(18), and 8(f) of the Workmen's Compensation Act, to determine the amount, and from whom compensation is payable where an employee, who previously lost the sight of an eye, subsequently, in an independent accident, loses several other members.
The evidence is entirely uncontroverted, and reveals that on September 6, 1944, Cecil Arview, hereinafter referred to as the claimant, sustained the permanent and complete loss of sight of the right eye in an accident arising out of and in the course of his employment for respondent Old Ben Coal Corporation, for which he was paid by respondent, compensation for the proper period of temporary total incapacity, and for the specific loss of an eye. Respondent also paid at that time, pursuant to the provisions of the act (sec. 8(e) (20),) the sum of $100 into the special fund, since an employee had lost the sight of an eye in a compensable accident.
Claimant continued in the employment of the Old Ben Coal Corporation, and on October 25, 1948, he sustained accidental injuries by coming in contact with an overhead power line, resulting in the amputation of his right leg 7 inches below the knee, the amputation of his left leg 8 inches below the knee, and the amputation of his left arm at the shoulder joint. For these injuries respondent Old Ben Coal Corporation has already paid the medical and hospital expenses, for the artificial limbs, 37 weeks of compensation for temporary total disability, and 190 weeks of compensation at the scheduled rate for the specific loss of one leg.
On the basis of this evidence the commission found that claimant was not entitled to any compensation from *525 the special fund, and ordered that the State Treasurer be dismissed as a party respondent. The commission further ordered that respondent Old Ben Coal Corporation pay claimant compensation for total permanent disability amounting to the sum of $26 per week for 275 weeks, and thereafter a pension, amounting to $858 annually, payable in 12 equal monthly installments of $71.50, during his lifetime. The circuit court of Franklin County affirmed the orders of the commission and both claimant and respondent Old Ben Coal Corporation filed petitions for writ of error, which have been allowed by this court.
Claimant Arview contends on this review that under a proper construction of the act, particularly sections 7(e), 8(e)(18) and 8(f), he is entitled to be paid, not only for his medical and hospital expenses, for his artificial limbs and for temporary total disability for 37 weeks, but for the specific loss of the left arm, amounting to $5850 as scheduled by the act, for the specific loss of the left leg, amounting to $4940, and for the specific loss of the right leg, also amounting to $4940; and that after the payment of all these specific losses, he is entitled to a 12 percent pension for his lifetime. These sums, claimant suggests, except for the specific loss of one leg, should be payable from the special fund of the State.
Respondent Old Ben Coal Corporation urges that, under a proper construction of these same sections of the act, its liability is limited to the payment of medical and hospital expenses, furnishing artificial limbs, and to the payment of compensation for the specific loss of one member, but that the claimant is further entitled to be paid from the special fund of the State compensation for the difference between the loss of the one member and permanent total disability, as well as a pension during his lifetime.
The State Treasurer, as ex-officio custodian of the special fund, contends that inasmuch as more than two members were lost in one accident the employer alone is liable *526 for compensation for permanent and total disability and for a lifetime pension.
In determining questions of law under the Workmen's Compensation Act, where the facts are uncontroverted, the Supreme Court is in no manner bound by the findings and conclusions of the Industrial Commission or of the circuit court. (Dietzen Co. v. Industrial Board, 279 Ill. 11.) The objective of all statutory construction is to ascertain the legislative intent. As reiterated by the courts, since the days Lord Coke first expounded his theory of statutory construction, this intent may be gleaned by first analyzing the law prior to the change, noting the defect to be remedied, and then analyzing the terms and provisions of the entire statute in the light of its objective. Sutherland Statutory Construction, Vol. 2, 3d ed., sec. 4501; Burke v. Industrial Com. 368 Ill. 554; City of Rockford v. Schultz, 296 Ill. 254; Boshuizen v. Thompson & Taylor Co. 360 Ill. 160, 163; Anderson v. City of Park Ridge, 396 Ill. 235, 244.
In City of Rockford v. Schultz, 296 Ill. 254, the court stated, at page 257: "The object in construing a statute is to ascertain and give effect to the legislative intent, and to that end the whole act, the law existing prior to its passage, any changes in the law made by the act, and the apparent motive for making such changes, will be weighed and considered."
While this approach does not sanction judicial legislation, it does direct the court to avoid a construction of the act which will render it ineffective or produce absurd consequences. (Patterson Pure Food Pie Co. v. Industrial Com. 335 Ill. 476, 480; Moweaqua Coal Corp. v. Industrial Com. 360 Ill. 194, 200.) It is therefore incumbent upon this court to first review the legislative metamorphosis of the relevant sections of the act.
Prior to the 1925 amendment section 8(e) (18) of the act provided that the loss, or the permanent and complete *527 loss of use of both hands, or both arms or both feet or both legs or both eyes, or of any two thereof shall constitute total and permanent disability, to be compensated according to the compensation fixed by section 8(f), and that these specific cases of permanent total disability should not be construed as excluding other cases.
At this time section 8(f) provided compensation for permanent total disability in the amount of a death benefit and thereafter a life pension equal to 8 percent thereof. It also provided in substance that the award may be modified if the employee returned to work and his earning capacity increased. Section 7(e) at this time contained no reference to the special fund, and provided merely that if no amount is payable in certain enumerated death cases, a sum not to exceed $150 should be paid for burial expenses by the employer.
Under this status of the law it was held that where an employee had previously sustained the loss or loss of use of one member or the sight of an eye, and subsequently, in an independent accident sustained the loss, or loss of use of another member, or the sight of an eye, he would be deemed to be permanently and totally disabled, and his employer at the time of the second loss was liable not merely for the member lost in the accident in his employment, but for such entire permanent and total disability. Wabash Railway Co. v. Industrial Com. 286 Ill. 194; Heaps v. Industrial Com. 303 Ill. 443.
As a result of this interpretation of the law, considerable hardship was imposed upon handicapped persons who had sustained, from any cause whatever, the loss, or loss of use of some member or the sight of an eye, for they were dismissed or unable to secure employment since employers could not reasonably assume the hazard of paying compensation for permanent total disability and a pension in case such employees lost another member in a compensable *528 accident. Furthermore, the likelihood of such a second accident and loss was enhanced by reason of the disabled condition of such employees. To remedy this unfortunate situation, i.e., the unemployability of such handicapped persons, representatives of employers and employees formulated, by agreement, amendments to these sections of the act. Inasmuch as the construction of these provisions as amended is the determinative issue in this case, the relevant provisions will be set out in haec verba.
Section 8(e)(18), as amended in 1925, provided: "The loss of both hands, or both arms or both feet or both legs or both eyes, or of any two thereof, suffered in one accident, or the permanent complete loss of use thereof suffered in one accident shall constitute total and permanent disability to be compensated according to the compensation fixed by paragraph (f) of this section, provided that these specific cases of permanent and total disability shall not be construed as excluding other cases; provided further that any employee who has in a previous and independent accident suffered the loss or permanent and complete loss of use of any one of such members and in a subsequent independent accident loses another or suffers the complete and permanent loss of use of any one of said members, the employer for whom the injured employee is working at the time of said last independent accident shall be liable to pay compensation only for the loss or permanent and complete loss of use of the member occasioned by the last independent accident."
This section was further amended in 1931 in a respect not material for the present inquiry, whereby the paragraph began with the words, "Specific cases of," and the words "in a previous and independent accident" were omitted and the word "previously" substituted therefor. By this latter change the benefits of this section were available in all cases where there had been a previous loss, or loss of use, of a member or loss of sight from any cause whatever.
*529 Section 8(f) was also amended in 1925 by adding the following provision: "if an employee who had previously incurred loss or the permanent and complete loss of use of one member through the loss or permanent and complete loss of use of one hand, one arm, one foot, one leg or one eye, incurs permanent and complete disability through the loss or the permanent and complete loss of use of another member, he shall receive in addition to the compensation payable by the employer and after such payments have ceased, an amount from the special fund provided in paragraph (3) of section 7, which, together with the compensation payable from the employer in whose employ he was when the last injury was incurred, will equal the amount payable for permanent and complete disability, as provided in this paragraph of this section." By amendment in 1931 the pension provided in that section for total and permanent disability was to be equal to 12 percent of the death benefit in such cases of permanent and total disability through loss of members.
Section 7(e) was also amended in 1925 to create the special fund. The fund was accumulated by funds paid by employers under certain specified circumstances. In section 7(e) it was provided that in death cases where no dependents survived, the sum of $400 should be paid into the special fund by the employer, and section 8(e)(2) provided that the employer pay, in cases where an employee lost a member or its use, or the sight of an eye, in addition to compensation to the employee, the further sum of $225 (later reduced to $100) into the special fund. This payment by the employer constituted a type of insurance whereby if the same employee lost another member in a compensable accident, the employer in whose employment the second loss occurred would be liable only for compensation of the member lost, and not for the permanent and total disability as defined in section 8(e)(18) where two members are lost. It was further provided that the fund *530 was to be under the custody and care of the State Treasurer, and would be subject to withdrawal upon orders of the Industrial Commission.
The obvious purpose of all these amendments was to enhance the employability of handicapped persons who previously lost a member or its use, or the sight of an eye, by limiting the liability of employers hiring or retaining such persons in their employment, and at the same time to afford such handicapped persons the proper measure of compensation if a second loss was sustained, with industry itself bearing the burden of such losses.
Under these provisions the law is clear that if claimant Cecil Arview had lost just one member in the second accident, the respondent Old Ben Coal Corporation would have been liable for compensation for just the loss of that member, and the respondent State Treasurer would be required to pay from the special fund the difference between the payment by the employer and the amount allowed for permanent and total disability, as well as a life pension at 12 percent of what the death benefits would have been had the employee died as a result of the accident.
The law, however, does not provide for, either in clear terms, or by implication, the situation in this case where an employee who had previously lost an eye in a compensable accident loses several additional members in a second independent accident. Each of the parties have conjectured from the foregoing amended provisions of the act what the elusive legislative intent would have been had the legislature envisaged these circumstances, and each has advanced, as hereinbefore noted, varying and diverse conclusions.
The Industrial Commission and the circuit court sustained the interpretation of the State Treasurer as ex-officio custodian of the special fund that where an employee loses more than one member in one accident, irrespective of whether he had previously lost a member or the sight of *531 an eye, his employer alone is liable for permanent and total compensation as well as for the pension, and there can be no recourse to the special fund.
In our judgment that interpretation is unwarranted from the terms of the statute, and is inconsistent with the legislative purpose and with the scheme of compensation provided for handicapped persons in the foregoing sections of the act.
In the light of the law prior to the 1925 amendments, and the resulting unemployability of handicapped employees who had previously lost a member, or its use, or the sight of an eye, and the objectives of the representatives of employers and employees in formulating the amendments to obviate that hardship, it is evident that the legislative intent was broader than that suggested by the State Treasurer. Not only were the amendments designed to impose the same compensation liability upon employers for the loss of a member or the sight of an eye sustained by any employee irrespective of whether the employee had previously lost a member, but they were also intended to afford greater employability for such handicapped persons by limiting the compensation liability of their employers and substituting therefor recourse to the special fund, created by prescribed contributions from all industry under the act.
The fact that the statute specifically provides for the payment of compensation for permanent and total disability and a pension from the special fund where a person who previously lost a member, or its use, or the sight of an eye, subsequently loses another member or the sight of an eye, does not by its terms, or by implication, preclude recourse to the special fund if such previously handicapped person loses more than one other member in the subsequent accident. Nor is it a logical application of the act to conclude that the loss of more than one other member converts the status of a handicapped employee, for whose benefit the special fund was created, into that of a nondisabled employee, who at no time had recourse to the special fund, *532 and thereby deprives such handicapped person of the benefits of the fund.
Nor should the loss of more than one member by such previously handicapped person eliminate the limited liability of his employer, as intended by the legislature, and render such employer liable for compensation to the same extent as though the employee had not been previously disabled, and as though the employer had not hired and retained such employee as a handicapped person with the increased hazard of a second accident. Employers are encouraged to retain and hire such previously disabled employees, even though they may be more prone to accident, because of the provisions in the act limiting compensation liability for such persons. As noted herein, under the act, where an employee loses an eye or a member, or its use, his employer is required to pay, in addition to compensation, the sum of $100 into the special fund, which payment is in the nature of insurance, so that if the employee ever loses another member in a compensable accident his employer at that time will have to pay only for the loss of a single member, while the employee will be entitled to be compensated for the permanent and total disability thereby sustained from the special fund.
In the instant case the claimant Cecil Arview lost an eye in a previous accident for which the respondent Old Ben Coal Corporation paid compensation and also paid $100 into the special fund, as required under section 8(e) (20) of the act. If the loss of the additional members in the second accident deprives both the employee and the employer of any benefits of the special fund, it is evident that the $100 paid by the respondent, or by any other employer under similar circumstances, was for naught.
Such a construction, contended for by the State Treasurer, would render entirely ineffective the legislative endeavor to protect handicapped employees, inasmuch as employers once again, as after the Wabash Railway case, *533 would be reluctant to hire or retain such previously handicapped employees on the ground that if they lost more than one other member in another accident, the likelihood of which would be enhanced by reason of the existing disability, all benefits of the special fund would be inoperative.
Therefore, it is our judgment that the only construction of these provisions, consistent with other provisions of the act and with the legislative purpose, would be that the loss of more than one member in a compensable accident by an employee who had previously lost a member, or its use, or the sight of an eye, cannot deprive the employee or his employer of the benefits of the special fund. In the instant case, therefore, the respondent Old Ben Coal Corporation is liable for compensation for the loss of a single member, and the State Treasurer should pay claimant the difference between that sum and the amount payable under the act for permanent and total disability as well as a 12 percent lifetime pension as specified in section 8(f) of the act.
We cannot sustain claimant's contention that he is entitled, in addition to the 37 weeks of compensation for temporary total disability, to compensation for the specific losses of both legs and the arm, totalling some 642 weeks of compensation at $26.50 per week, and thereafter to a life pension, which sums, except for the compensation for temporary total disability and for the loss of one member, claimant urges, should be payable from the special fund.
It is evident from the terms of section 8(f) that the only payment contemplated from the special fund relates to permanent and total disability and the 12 percent pension. There is no reference authorizing payment from the fund for specific losses. The fund may be used only in cases of permanent and total disability involving handicapped persons who previously had lost a member, or its use, or an eye, and who subsequently become permanently and totally disabled by reason of the loss of another member or eye.
*534 Furthermore, the life pension from the special fund authorized in section 8(f) is based entirely upon a percentage  12 percent in specific cases of total and permanent disability  of the amount which would have been payable as a death benefit. The pension is not, and cannot be, based upon the total amount of compensation payable for specific losses. In fact, the specific injury schedule (section 8(e)) provides that any employee shall not receive any compensation for such injuries under any other provision of this act. Hence a pension would be entirely incompatible with an award for specific losses as claimant urges.
Moreover, inasmuch as under the act the loss or loss of use of two members or the sight of both eyes is defined as permanent total disability, (section 8(e) (18),) for which a designated amount of compensation is payable, it would be specious reasoning to conclude that the loss of more than two members would not constitute permanent and total disability, but revert to a condition of specific loss. The loss of the additional members over and above the two specified in the act cannot convert such statutory permanent and total disability into a case of specific losses. That the employee disabled by the loss of more than two members may sustain greater hardship than an employee who has lost only two members should be recognized by the legislature and provision made for him in the act. However, this circumstance does not modify his condition into one of specific losses under the present law, or give him the right to elect whether he will itemize his disabilities or claim permanent total disability. There is no provision in the act giving any employee, previously handicapped or otherwise, the right to elect whether he will claim compensation for the cumulative loss of members sustained in one accident, or claim statutory permanent and total disability. Any such interpretation of the act would render meaningless both the provision relating to the sum payable for permanent *535 and total disability and the provision defining the loss, or loss of use of two members, or the sight of both eyes as permanent total disability. An employee so disabled could either add up the compensation due for loss or loss of use of members sustained in an accident and compare that sum with the amount payable to him for permanent total disability, and then label his condition so as to procure the greatest amount of compensation. It is evident that such a procedure is not within the purport of the act.
In the instant case, according to claimant's contention the payments for specific loss of members would extend over a period of 605 weeks and would total some $15,730. Not only is this interpretation unwarranted from the terms and provisions of the act as hereinbefore noted, but it is expressly barred by section 8(h) which prohibits compensation payments from extending over a period of more than 8 years, except in cases of complete disability, and claimant here would be seeking only cumulative specific losses.
In support of his contention that the act authorizes the payment of compensation for combined specific losses sustained in a single accident to be in excess of the amount of compensation allowed for permanent and total disability or for death, claimant cites Henson Robinson Co. v. Industrial Com. 386 Ill. 232. It is our judgment that the Henson case does not sanction any such result. The court therein determined that the provisions for compensation for temporary total incapacity and those for specific loss are independent of each other, and the combined sum of these two categories is not limited by the amount payable on death. The court was not called upon to determine whether the amount and duration of compensation payments for specific losses was entirely unlimited as claimant contends.
Claimant further contends that he is also entitled to retain the 37 weeks of temporary total disability compensation paid by the respondent Old Ben Coal Corporation. Apparently there has been a conflict in the decisions with *536 reference to such payments in cases involving permanent and total disability as a result of the loss of members. In Panther Creek Mines, Inc. v. Industrial Com. 342 Ill. 68, it was argued that in cases involving total and permanent disability of an employee by reason of the loss of a member where the employee had previously lost a member, the employer should not be compelled to pay any compensation during the period of temporary total incapacity, but liability should be limited to the loss or loss of use of the members occasioned by the last independent accident. The court rejected that contention and held that section 8(e)(18) of the act must be construed with other provisions of the entire section, and that in addition to the compensation payable for the loss of a member or eye, the employer was liable for compensation during the period of temporary total incapacity. Although a contrary result was reached in Hamilton Engineering Co. v. Industrial Com. 399 Ill. 30, it is believed that the decision in the Panther Creek Mines case allowing compensation for temporary total incapacity in these cases of statutory permanent total disability is more in accordance with the entire theory and system of compensation established by the act, and should be followed.
On the basis of our analysis, the claimant herein was entitled to receive from his employer, the respondent Old Ben Coal Corporation, the necessary medical and hospital services, artificial members, temporary total disability compensation for 37 weeks and compensation for 190 weeks for the loss of a leg, all of which has been paid. In addition thereto the claimant is entitled to be paid from the State fund an amount which, together with the 190 weeks paid by the employer, will equal the sum payable for permanent and complete disability under the act, as well as a 12 percent pension as provided by the act.
The determination of the commission, as affirmed by the circuit court, imposing the entire burden of liability *537 upon the respondent Old Ben Coal Corporation for permanent and total disability, as well as for an annual pension, was not in accordance with the law and should, therefore, be reversed and the cause remanded with directions to enter judgment in accordance with the determinations set forth herein.
Reversed and remanded, with directions.