THE TREASURER OF THE STATE OF ILLINOIS, Ex-Officio Custodian of the Special Fund, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Alvie Edward Kemp, Jr., *et al.*, Appellees).

First District (Industrial Commission Division)   No. 1—84—3015WC

Opinion filed September 25, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Ferdinand P. Serpe and Beverly N. Masuda, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Marlene Beth Binder, of Illinois Industrial Commission, of Chicago, for appellee Industrial Commission.

Dennis S. O'Brien, of Livingstone, Mueller, Gunning, O'Brien & Davlin, P.C., of Springfield, for appellee Zack Company.

Roger Lapan, of Bloomington, for appellee Alvie Edward Kemp, Jr.

JUSTICE McNAMARA delivered the opinion of the court:

The Treasurer of the State of Illinois as ex-officio custodian of the Second Injury Fund (Ill. Rev. Stat. 1979, ch. 48, par. 138.7(f)), appeals

from an order of the circuit court of Cook County confirming a decision of the Industrial Commission which ordered the Second Fund to pay certain benefits to the claimant Alvie Edward Kemp. An arbitrator had found that the claimant sustained a work-related injury to his left leg and that he previously had sustained the permanent and complete loss of use of his right foot in a nonwork-related matter. The arbitrator found that as a result of the accident claimant sustained the permanent and complete loss of the use of his left leg, and that under section 8(e)(18) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(e)(18)), claimant is totally and permanently disabled. In addition to payments for necessary medical expenses, penalties and claimant's temporary total disability, the arbitrator ordered claimant's employer, Zack Company, to pay $350 per week for 200 weeks. Thereafter, the Second Injury Fund was ordered to pay $350 per week for life.

On review sought by the employer, the Commission adopted the arbitrator's findings as to causation and the nature and extent of claimant's injuries, and it affirmed the payments for medical expenses, penalties and temporary total disability. The Commission, however, reduced the employer's payments for claimant's loss of the use of hs left leg to $269.21 per week for 200 weeks and ordered the Second Injury Fund to pay the difference of $80.79 for 200 weeks concurrent with the employer's payment. The Second Fund was also required to pay $350 per week pension at the end of the 200 weeks. Only the State Treasurer appeals.

Claimant was employed by Zack Company as a truck driver. On September 12, 1980, while unloading fans from a truck, he fell and injured his left knee. Claimant left work and that evening was treated in the emergency room of Mennonite Hospital. On September 22, 1980, claimant saw Dr. Bratberg, who recommended that he stay off his left knee. Claimant returned to work as a truck driver on November 2, and worked until December 7, 1980.

At the request of the employer's insurance company, claimant was examined on December 10, 1980, by Dr. Choon B. Choi, an orthopedic surgeon. Dr. Choi observed that claimant limped on both sides, with the right side more pronounced than the left. The calf and thigh muscles of both legs were underdeveloped, and there was swelling and tenderness. Claimant had a history of poliomyelitis in his right leg from infancy. He suffered from right foot drop, was unable to extend the right ankle joint and had to extend the right knee to place any weight on the right side. Claimant had worn a brace on his right foot until he was 12 years old, when he had surgery on his ankle to cor-

rect a valgus deformity. Dr. Choi recommended an arthogram of the left leg to confirm his diagnosis of chronic synovitis, an inflammation of the tissue lining the cavity of the knee joint. Claimant did not have the arthogram but on January 8, 1981, returned to Dr. Choi with the same complaint of pain and swelling of the left knee.

An arthogram, performed on January 12, 1981, confirmed Dr. Choi's diagnosis of chronic synovitis at the left knee joint, and he injected cortisone. Claimant was later admitted to the hospital and, on February 2, 1981, Dr. Choi performed a synovectomy, a lateral release and a shaving of the patella. After his release from the hospital on February 7, claimant continued to see Dr. Choi. His left knee was still swollen, and Dr. Choi aspirated it with fluid and injected it with cortisone. In July, Dr. Choi prescribed a brace for claimant's right foot. On September 9, Dr. Choi performed another synovectomy on the left leg. By October 1, 1981, claimant's left knee was still swollen but the knee motion was almost normal.

On October 25, 1981, claimant was treated by Dr. Judy Wright for a broken index finger caused by a fall when his left leg gave out. Claimant continued his visits to Dr. Choi, and in November his knee motion had increased to 120 degrees of flexation. After his visit on January 13, 1982, Dr. Choi told claimant he could try to return to work as a truck driver in March. On February 26, claimant's left knee was swollen because he had walked four blocks. Claimant was unable to drive a truck because of the cane he had to use. On March 3, 1982, Dr. Choi prescribed a brace for claimant's left leg. Claimant complained of back pain while wearing the brace. Shortly after he started using it, the brace locked, causing the claimant to fall and injure his elbow. The brace was changed, and he was able to wear it. On June 23, 1982, he made his last visit to Dr. Choi. Claimant complained of back pain and pain in his right leg, and Dr. Choi instructed him to use crutches. Dr. Choi diagnosed claimant's condition as permanent. In his opinion, claimant could not lift any heavy objects, could not operate a clutch, could not walk four blocks, and could work only in a sedentary job.

In May 1982, Kathy Hall, a rehabilitation counselor, arranged for claimant to work as a truck dispatcher with Wildwood Industries. The position, as described to her and Dr. Choi, was within claimant's capabilities. The position required more walking than expected and his left leg became swollen. He also developed a blister on his hand from the cane. Claimant worked eight hours on June 28, 1982, and three hours the following day. Claimant worked another full day at Wildwood on July 6 and for 90 minutes the following day. Claimant has not worked

since then.

At the time of the hearing before the arbitrator, claimant was wearing orthopedic shoes. He had a brace on his right foot which extended up his calf and a brace on the left leg. Prior to driving a truck, he worked on a farm and in a factory. Claimant had 2½ years of high school education.

The arbitrator found that claimant was temporarily totally disabled for 88 weeks, that prior to the work-related injury he had lost the use of his right foot, that as a result of this work-related injury he lost the use of his left leg, and that under the Act claimant was permanently and totally disabled. The arbitrator ordered the employer to pay claimant $350 per week for 200 weeks, the statutory award for complete loss of use of two members.

Only the employer sought review. The only issues it raised were a scrivener's error in the dates of claimant's temporary total disability and the rate of payment for 200 weeks for claimant's complete loss of use of his left leg. The Commission modified the arbitrator's decision and ordered the employer to pay $269.21 per week for 200 weeks, the statutory amount for loss of use of one member. The Commission ordered the Second Injury Fund to pay the difference of $80.79 for 200 weeks and thereafter to pay $350 per week for claimant's lifetime.

On appeal, the State Treasurer contends that claimant failed to sustain his burden of proof that he had a complete loss of use of his right leg prior to the accident of September 12, 1980, that he failed to establish that he was totally and permanently disabled under section 8(f) of the Act, and that the Commission erred in ordering the Special Fund to make payments concurrent with the employer's payments.

■ In order to recover benefits under the Act, the employee has the burden of proving all the elements of his case, including the extent and permanency of his injuries. (*Gates Division, Harris-Intertype Corp. v. Industrial Com.* (1980), 78 Ill. 2d 264, 399 N.E.2d 1308.) The Commission has the responsibility of assessing the credibility of the witnesses and determining the weight to be given to their testimony. (*Caradco Window & Door v. Industrial Com.* (1981), 86 Ill. 2d 92, 427 N.E.2d 81.) Its findings will not be set aside on review unless they are against the manifest weight of the evidence. *Martin v. Industrial Com.* (1982), 91 Ill. 2d 288, 437 N.E.2d 650.

Assuming that the Special Fund has not waived this issue by failing to seek review of the arbitrator's decision, we cannot say the Commission's decision that claimant sustained the complete loss of use of his right foot prior to the accident is against the manifest weight of the evidence. The only testimony offered was that of the

claimant and Dr. Choi. Claimant stated that he contracted poliomyelitis during infancy and that his right ankle required surgery when he was 12 years old. Dr. Choi stated that claimant limped more noticeably on his right side, that claimant had to fully extend his knee before putting any weight on the right side and that the muscles of the right leg were underdeveloped. The right calf muscle was one inch smaller in circumference than the left, the right thigh muscle was 1½ inches smaller than the left, and claimant's right leg was 1½ inches shorter than the left. Claimant also had right foot drop which prevented him from extending the ankle joint, bringing the foot up or even flexing the foot.

Without presenting any contradictory medical testimony on behalf of the Special Fund, the State Treasurer argues that claimant did not have a prior, complete loss of use of his right foot because he was able to drive a truck and because he was able to walk without the aid of a brace or cane. Dr. Choi stated unequivocally, however, that there was no change in the condition of claimant's right foot since the accident and that he would have prescribed a brace for claimant's right foot even prior to the injury to the left foot.

There is no requirement that a claimant must establish he is unable to work as a result of the loss of use of a member, but only that the member no longer performs its normal function. (See Ill. Rev. Stat. 1983, ch. 48, par. 138.8(e); *A.O. Smith Corp. v. Industrial Com.* (1977), 69 Ill. 2d 240, 371 N.E.2d 607.) That claimant was capable of employment does not preclude a finding that he had a prior, complete loss of use of his right foot.

■ The State Treasurer next contends that the claimant has not shown he was totally and permanently disabled under section 8(f) of the Act.

In *Freeman United Coal Mining Co. v. Industrial Com.* (1984), 99 Ill. 2d 487, 459 N.E.2d 1368, our supreme court noted that there is a distinction between the two kinds of permanent and total disability referred to in section 8(f). The first type, defined only in section 8(f), is that which renders the employee wholly and permanently incapable of work. The second type of permanent and total disability, as specified in the fourth paragraph of section 8(f) is that enumerated in section 8(e)(18). This is *per se* disability once the employee proves the loss or loss of use of two members.

Section 8(e)(18) consists of two paragraphs. In the first paragraph, the statute provides that "the specific case of loss of [use of two members] constitutes total and permanent disability." The second paragraph refers to the situation where the loss occurs in two separate

accidents and it limits the liability of the employer at the time of the second injury. The State Treasurer urges that section 8(e)(18) makes a distinction between loss or loss of use of two members in one accident and the same loss which occurs after two separate injuries. He argues that section 8(f) *per se* disability applies only to the former and that claimant must show he is incapable of work. We disagree.

Section 8(e)(18) previously provided that the loss or loss of use of two members, "suffered in one accident," constituted complete and permanent disability. However, Public Act 79—79 amended the Act, effective July 1, 1975, and deleted all references to the requirement that an employee must lose both members in one accident before it is presumed that he is completely and permanently disabled. This deletion evidenced the legislature's clear intent to abolish any distinction between employees suffering loss in one or two accidents. Under sections 8(e) and 8(f), claimant need only prove the loss of use of his right foot and left leg, and he is then presumed to be completely and totally disabled.

■ The State Treasurer finally contends that even if there was a complete loss of use of one member prior to the accident of September 12, 1980, and if claimant was rendered totally disabled as a result of the loss of use of two members, the Commission erred in its decision that the Special Fund must supplement the benefits paid by the employer during the first 200 weeks.

The Special Fund was established to encourage employers to hire handicapped workers by limiting the employers' liability for injuries suffered by these employees. (*Arview v. Industrial Com.* (1953), 415 Ill. 522, 114 N.E.2d 698.) Rather than hold the employers responsible for the disability resulting from the combination of any prior handicap or illness and the present injury, the loss is apportioned between the employer and the Special Fund. Section 8(e)(18) provides in relevant part:

> "Any employee who has previously suffered the loss of permanent and complete loss of the use of any such members, and in a subsequent independent accident loses another or suffers the permanent and complete loss of the use of any one of such members the employer for whom the injured employee is working at the time of the last independent accident *is liable to pay compensation only for the loss or permanent and complete loss of the use of the member occasioned by the last independent accident.*" (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(e)(18).)

Section 8(f) specifies when the Second Injury Fund will make pay-

ments. It provides as follows:

"If an employee who had previously incurred loss or the permanent and complete loss of use of one member, through the loss or the permanent and complete loss of the use of one hand, one arm, one foot, one leg, or one eye, incurs permanent and complete disability through the loss or the permanent and complete loss of the use of another member, he shall receive, *in addition to* the compensation payable by the employer *and after* such payments have ceased, an amount from the Second Injury Fund provided for in paragraph (f) of Section 7, *which, together with the compensation payable from the employer in whose employ he was when the last accidental injury was incurred, will equal the amount payable for permanent and complete disability as provided in this paragraph* of this Section." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 48, par. 138.8(f).

In construing a statute, the court must ascertain and give effect to the legislature's intent. *(People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 357 N.E.2d 1180.) To ascertain that intent the statute shall be construed as a whole in light of its general purposes. *Gill v. Miller* (1983), 94 Ill. 2d 52, 445 N.E.2d 330; *Miller v. Department of Registration & Education* (1979), 75 Ill. 2d 76, 387 N.E.2d 300.

The issue before us is apparently one of first impression. Prior to July 1, 1977, the statutory award for the loss of use of one member and the award for the loss of use of two members was 66²/₃% of the employee's average weekly wage, but in no event less than certain specified minimum amounts. (Ill. Rev. Stat. 1975, ch. 48, pars. 138.8(e), 138.8(f) and 138.8(b)(2).) In addition, the employee with two losses was entitled to a pension. Effective July 1, 1977, the statutory award for a number of classes of cases was increased to 133¹/₃% of the employee's average weekly wage. The cases included amputations, eye enucleations, permanent total disability under sections 8(e) and 8(f) and temporary total disability under section 8(b)1. (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(b)(4).) The State Treasurer contends that the legislature clearly intended in section 8(f) that payments from the Fund would be made only after the employer's payments had ceased and that in enacting the amendment to section 8(b)(4), the legislature had not intended to impose additional liability on the Fund to pay the difference between the rate for loss of use of one member and the increased rate for loss of use of two members. In his brief, the State Treasurer imposes the burden upon the employer with the Fund relieving the employer of the liability only for the pension. During oral argument the State Treasurer again argued that the Fund was liable

only for the pension, but apparently conceded that the employer should only pay for the loss of the second member. He thereby urged that the employee is not entitled to payments for permanent total disability for the first 200 weeks.

To determine the intent of section 8(f), we first consider the legislative presumption contained in its wording that as a result of the loss of use of two members, claimant is completely disabled. We find nothing in the Act requiring a reduction in his benefits in this case. Nor does the State Treasurer direct our attention to any such provision. Claimant is entitled to $350 per week for 200 weeks and an additional $350 per week for life thereafter This result is in keeping with the purpose of the statute, to fully compensate employees for work-related injuries.

Section 8(e)(18) clearly limits the liability of the employer by expressly providing that it is only liable for the loss of use of the second member. To force the burden of compete, rather than partial, disability payments on the employer for the first 200 weeks violates the clearly expressed intent of section 8(e)(18) and subverts the entire purpose of the Fund. The goal of the statute is to place handicapped workers on a par with other workers (*Arview v. Industrial Com.* (1953), 415 Ill. 522, 114 N.E.2d 698.) That result is achieved by the Commission's decision here.

Furthermore, we cannot agree with the State Treasurer's reading of section 8(f). The language of that section imposes liability on the Fund "in addition to" that of the employer as well as "after" the employer's liability ceases. Section 8(f) also states that the Fund's payments "together with" the employer's payments will equal the amount for permanent and complete disability. The supreme court noted, in *dicta*, that had the *Arview* facts been similar to those before us here, the Fund would pay the difference in the amounts for permanent partial and permanent total disability as well as the lifetime pension. A noted authority reaches the same conclusion. 2 T. Angerstein, Illinois Workmen's Compensation sec. 1638, at 326-27 (1952).

■ We likewise reject the State Treasurer's concerns that the legislature could easily have inserted additional language in the statute if it intended the Fund to pay the increased benefits. Since the legislature did not reduce the employee's benefits and did not increase the employer's liability, the legislature must have intended the Fund to pay the difference. The Commission properly found that claimant had sustained a complete loss of use of one member prior to the accident of September 12, 1980, that claimant was rendered totally disabled as a result of the loss of use of two members, and that the Sec-

ond Injury Fund must supplement the benefits paid by the employer during the first 200 weeks.

Accordingly, the decision of the circuit court of Cook County confirming the decision of the Industrial Commission is affirmed.

Judgment affirmed.

WEBBER, P.J., and LINDBERG, BARRY and KASSERMAN, JJ., concur.