(No. 106680.—

BEELMAN TRUCKING, Appellee, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Jack G. Carson, Appellant).

*Opinion filed May 21, 2009.*

Mark Glass, of Glass & Korein, LLC, of East St. Louis, for appellant.

Robert N. Hendershot, of Evans & Dixon, LLC, of St. Louis, Missouri, for appellee.

John W. Powers, of Cullen, Haskins, Nicholson & Menchetti, P.C., of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Plaintiff, Jack Carson, suffered serious injuries to his arms and legs as a result of a vehicular accident. His injuries arose out of and in the course of employment with defendant, Beelman Trucking. Carson filed a workers' compensation claim. An arbitrator awarded Carson benefits, which both the Workers' Compensation Commission and the circuit court of Clinton County upheld. Beelman Trucking appealed. The appellate court reversed in part, holding that the Commission erred in awarding Carson benefits with respect to the loss of use of his arms. 381 Ill. App. 3d 701. Carson then filed a petition for leave to appeal, which we allowed pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315(a)).

### BACKGROUND

The parties do not dispute the facts underlying this workers' compensation case. On April 19, 1995, Jack Carson was severely injured in a vehicular accident. Carson had been driving a truck for his employer, defendant

Beelman Trucking (Beelman). The parties agree that Carson's injuries arose out of and in the course of his employment. As a result of the accident, Carson suffered paralysis in both legs, paralysis below the shoulder in his left arm, and the surgical amputation of his right arm above the elbow.

Carson filed a claim under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1994)). Carson presented his claim to an arbitrator, who awarded statutory permanent total disability benefits under section 8(e)(18) for the loss of use of Carson's legs (820 ILCS 305/8(e)(18) (West 1994)). The arbitrator also awarded 235 weeks of permanent partial disability for the loss of use of Carson's left arm, and 250 weeks of permanent partial disability for the loss of Carson's right arm, under section 8(e)(10) of the Act (820 ILCS 305/8(e)(10) (West 1994)).

The arbitrator also awarded Carson various other expenses. Treating Carson's injuries has required substantial medical services. These services include full-time nursing care, modifications to Carson's house, and motorized wheelchairs. Carson also required handicap modifications to his vehicle. Although Carson cannot drive, modifications to the van were necessary to accommodate his motorized wheelchair. The arbitrator awarded these expenses, which were not disputed by the parties.

However, the parties did dispute two other expenses. The first was the cost of a home computer system, which in addition to controlling the lighting in Carson's bedroom also enables Carson to communicate with friends and family over the Internet. The arbitrator concluded that the medical opinions in the case indicated that the computer system was a reasonable and necessary expense and awarded Carson $12,674.35 for the computer-related purchases. The second expense was an award of $708 to reimburse a portion of Carson's insur-

ance premium for his handicap modified van. The arbitrator concluded that portion of Carson's premium was identifiably related to Carson's injury.

Beelman, the employer, appealed the arbitrator's decision to the Illinois Workers' Compensation Commission (Commission). The Commission amended the arbitrator's decision by awarding Carson an additional 50 weeks of compensation for the amputation of his right arm. This amendment was based on the Commission's conclusion that Carson's injury was such that he would be incapable of using a prosthetic arm. In all other respects the arbitrator's decision was upheld.

After receiving the Commission's order, Beelman next appealed to the Clinton County circuit court. The circuit court concluded that the Commission's decision to award benefits under both sections 8(e)(18) and 8(e)(10) was not contrary to law. With respect to the expenses awarded for Carson's computer system and automobile insurance, the circuit court concluded such awards were not against the manifest weight of the evidence. The circuit court therefore confirmed the Commission's decision.

The appellate court affirmed in part and reversed in part. The appellate court concluded that the Commission lacks the authority to award benefits for both permanent partial disability (section 8(e)(10)) and permanent total disability (section 8(e)(18)) that result from the same accident. The court then affirmed the circuit court in awarding expenses for both the home computer system and insurance premium.

Carson filed a petition for leave to appeal, which this court granted pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315(a)). We then allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of Carson. 210 Ill. 2d R. 345.

Carson asserts that the language of the statute allows him to be awarded benefits under both section

8(e)(18) and section 8(e)(10) or, in the alternative, that the statute violates the equal protection clauses of the United States and Illinois constitutions and article I, section 12, of the Illinois Constitution. Additionally, on cross-appeal Beelman asserts that the Commission erred in awarding expenses for Carson's home computer system and the handicap modified van's insurance premium. For the reasons that follow, we affirm that part of the appellate court judgment confirming the Commission's award of benefits under section 8(e)(18), affirm that part of the order awarding expenses relating to Carson's home computer system and insurance premium, but reverse that part of the judgment which set aside the Commission's award of benefits under section 8(e)(10).

## ANALYSIS

Before a reviewing court may overturn a decision of the Commission, the court must find that the award was contrary to law or that the Commission's factual determinations were against the manifest weight of the evidence. *Fitts v. Industrial Comm'n*, 172 Ill. 2d 303, 307 (1996). On questions of law, review is *de novo*, and a court is not bound by the decision of the Commission. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 60 (1989). On questions of fact, the Commission's decision is against the manifest weight of the evidence only if the record discloses that the opposite conclusion clearly is the proper result. *Vogel v. Industrial Comm'n*, 354 Ill. App. 3d 780, 786 (2005).

### I. Benefits Awarded Under Section 8(e) of the Act

#### A. *Interpretation of the Act*

The fundamental rule of statutory interpretation is to ascertain and effectuate the legislature's intent. *Hamilton v. Industrial Comm'n*, 203 Ill. 2d 250, 255 (2003). We look to the statutory language, which given its plain and ordinary meaning, is the best indication of intent.

*Hamilton*, 203 Ill. 2d at 255. In addition to the statutory language, we also consider the reason for the law, the problems to be remedied, and the objects and purposes sought. *General Motors Corp. v. State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 13 (2007). In this case, the Workers' Compensation Act is a remedial statute intended to provide financial protection for injured workers and it is to be liberally construed to accomplish that objective. *Flynn v. Industrial Comm'n*, 211 Ill. 2d 546, 556 (2004). With this in mind, we turn to the applicable provisions of the Act.

Section 8(e) of the Act provides for compensation of a worker who suffers a permanent partial disability. This section is organized into subsections, commonly referred to as the "schedule." For the most part, each subsection in the schedule fixes the compensation for a particular body part, or member, that a worker might lose in a workplace accident. This schedule of losses awards benefits in terms of a fixed number of "weeks." A "week" of compensation is equal to 60% of what is referred to as the worker's "average weekly wage." The average weekly wage is based on calculations governed by a section of the Act not at issue in this case.

The number of weeks of compensation varies depending on the specific loss suffered by the worker. Applicable to this case is subsection (10) of section 8(e), under which the Commission awarded Carson benefits for the loss of each of his arms. Section 8(e)(10) provides, in part:

"Arm—235 weeks. *** Where an accidental injury results in the amputation of an arm above the elbow, compensation for an additional 15 weeks shall be paid, except where the accidental injury results in the amputation of an arm at the shoulder joint, or so close to shoulder joint that an artificial arm cannot be used, *** in which case compensation for an additional 65 weeks shall be paid." 820 ILCS 305/8(e)(10) (West 1994).

Not every subsection of section 8(e) provides for compensation based on a single lost member. The other subsection at issue in this case provides for certain combinations of losses. Section 8(e)(18) of the Act provides:

> "The specific case of loss of both hands, both arms, or both feet, or both legs, or both eyes, or of any two thereof, or the permanent and complete loss of the use thereof, constitutes total and permanent disability, to be compensated according to the compensation fixed by paragraph (f) of this Section. These specific cases of total and permanent disability do not exclude other cases." 820 ILCS 305/8(e)(18) (West 1994).

Section 8(e)(18) refers to paragraph (f), which provides for a weekly benefit, awarded for life, equal to $66^2/3\%$ of the worker's average weekly wage. Thus, not only does section 8(e)(18) address the loss of more than one member, it differs from the other subsections found in the schedule of losses under 8(e) in that it does not fix compensation for a set number of weeks. Instead the benefit is payable for life. Section 8(e)(18) also differs from the other subsections in that the injuries it applies to constitute "total and permanent" disability rather than permanent partial disability.

Here Carson challenges the appellate court's judgment that the Commission erred in awarding benefits under both section 8(e)(10) and section 8(e)(18). Specifically, Carson argues that the appellate court's decision imposes a maximum benefit that was not intended by the legislature. Carson asserts that adopting such a rule allows otherwise compensable injuries to other body parts to go uncompensated.

Beelman responds that the appellate court properly capped Carson's recovery to those benefits authorized by section 8(e)(18). Beelman suggests that because the words "total" and "permanent" have not been defined in the statute, they must be given their plain and ordinary dictionary meaning. Beelman asserts that

"total" should be read to mean "whole; not divided; full; complete" and "utter; absolute." According to Beelman, section 8(e)(18) is a maximum benefit for injuries sustained in a single accident because a worker cannot be more than totally and permanently disabled under the commonly accepted definition of "total."

Undefined terms in a statute generally should be given their commonly accepted or popular meaning. *Gem Electronics of Monmouth, Inc. v. Department of Revenue*, 183 Ill. 2d 470, 477-78 (1998). Further, it is entirely appropriate to employ the dictionary as a resource to ascertain the meaning of undefined terms, and this court has done so in the past. *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 15 (1991). However, the use of a commonly accepted or popular meaning is not appropriate when the intention of the legislature is to the contrary. *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 185 (1992).

As noted above, section 8(e)(18) provides that the loss of any two enumerated members "constitutes total and permanent disability." Section 8(f), which fixes the amount of compensation, in turn provides that "[i]n case of complete disability, which renders the employee wholly and permanently incapable of work, or in the specific case of total and permanent disability as provided in [section 8(e)(18)], compensation shall be payable at the rate provided in subparagraph 2 of paragraph (b) of this Section for life." 820 ILCS 305/8(f) (West 1994). Section 8(f) refers to both "complete disability" and to statutory total and permanent disability under section 8(e)(18). Under this section, the phrase "complete disability" applies to those workers who are rendered wholly incapable of work. In contrast, the phrase "total and permanent disability" under section 8(e)(18) contemplates that the injured worker may yet be capable of finding future employment.

This court has already addressed this distinction, and examined the meaning of "total and permanent" disability under section 8(e)(18), in *Freeman United Coal Mining Co. v. Industrial Comm'n*, 99 Ill. 2d 487 (1984). In *Freeman United* we considered the case of a worker who had been awarded compensation for total and permanent disability under section 8(e)(18) after an initial accident, but who had suffered a specific loss following a second accident. This court recognized the particular, nonliteral meaning of "total and permanent" disability:

"Disability under section 8(e)(18), by contrast [to 'complete disability'], is 'permanent and total' only by legislative pronouncement; it is not inconsistent with a continuing ability to work, and in that event the pension mandated for it is not to be affected by the employee's return to work." *Freeman*, 99 Ill. 2d at 492.

Further, we noted that compensation under section 8(e)(18) "reflects not actual permanent total disability or actual loss of wages, but 'a stated legislative determination that the [specific injuries suffered] shall have compensation at a fixed figure.' " *Freeman United*, 99 Ill. 2d at 494, quoting *Jones v. Cutler Oil Co.*, 356 Mich. 487, 491, 97 N.W.2d 74, 76 (1959). In *Freeman United* we therefore determined that use of the commonly accepted and popular meaning of "total and permanent" was contrary to the legislature's intent to allow for "permanent and total" benefits even in the absence of actual permanent and total disability. Thus, Beelman's argument that the legislature's use of the words "total" and "permanent" serves as a cap on benefits for injuries sustained in a single accident is not supported by this court's prior interpretation of the statute.

We next turn to the remaining language of section 8(e)(18) to determine whether that section imposes such a cap. By its own terms, the text of section 8(e)(18) refers to the loss of "both" hands, arms, feet, legs, or eyes, "or

of any two thereof." Likewise, section 8(f), in addressing the case where separate accidents lead to separate injuries, provides that if an employee had previously lost the use "of one member" and incurs the loss "of another member," then the Second Injury Fund is to pay the difference between the second employer's share for the specific loss of the member and the amount owed under the statutory total and permanent disability language of section 8(e)(18).

The above provisions plainly reference the loss of only two members and do not address the situation where a worker suffers the loss of more than two members in a single accident. However, Carson argues that the final sentence of the first paragraph of section 8(e)(18), which states that "[t]hese specific cases of total and permanent disability do not exclude other cases," implicitly allows recovery for other specific losses suffered in addition to the loss of two enumerated members described in section 8(e)(18). Similarly, *amicus* argues that the word "case" refers to a "case of loss."

A general usage dictionary reveals the commonly accepted and popular meaning of the word "case" to be "a special set of circumstances or conditions." Webster's Third New International Dictionary 345 (1993). In this sense the word is synonymous with "instance" or "example." Roget's II: The New Thesaurus 363 (1988). Using this definition, section 8(e)(18) would begin: "In the specific *instance* of loss of both hands." This use of *case* conveys the legislature's intent to address that "special set of circumstances" where a worker has suffered the loss of two members.

Beelman, however, argues that other "cases" refers to other lawsuits or proceedings. Beelman relies on the law dictionary definition of "case" as "[a] proceeding, action, suit, or controversy at law or in equity." Black's Law Dictionary 206 (7th ed. 1999).

Using Beelman's definitions the sentence would read, "in the specific *proceeding* of loss of both hands" or "in the specific *action* of loss of both hands." Likewise, the final sentence in section 8(e)(18) would read: "These specific *proceedings* of total and permanent disability." In contrast to using the general usage dictionary definition, replacing the word "case" with any of Beelman's suggested definitions results in a sentence that makes little logical sense in context. The schedule of benefits in section 8(e) does not address specific actions or proceedings. Each subsection instead addresses a particular loss, for example, a loss of individual members, a loss of eyesight, or a loss of hearing. We therefore conclude that because the statute does not indicate an intention of the legislature to the contrary, the legislature intended the word "case" to have its commonly accepted and popular meaning, that of a synonym to "instance" or "example."

Although we do not accept Beelman's definition of "case," the question remains whether the provision stating that section 8(e)(18) does not "exclude other cases" indicates that the legislature intended that workers losing more than two limbs to be entitled to recover under both section 8(e)(18) and under other scheduled losses.

As noted above, section 8(e) speaks in terms of specific losses. Each subsection of the schedule of benefits allows a benefit for each applicable case of loss of a particular member. Section 8(e)(18) in particular addresses the "specific case of loss" of two members. Section 8(e)(18) goes on to say that this specific case "does not exclude other cases." Thus, this means that section 8(e)(18) does not exclude other cases of loss. In *Freeman United*, we held that a subsequent loss of use of a worker's arm was compensable even though the worker had previously recovered under section 8(e)(18) for different losses. *Freeman United*, 99 Ill. 2d at 495. Those different losses were compensable because of their effect

on the worker's earning capacity, distinguishing those injuries from the injuries which resulted in the worker's statutory total and permanent disability. *Freeman United*, 99 Ill. 2d at 493.

We noted in *Freeman United* that it was " 'permissible to penetrate the fiction of 100 per cent disability and accept the truth of [the worker's] remaining earning ability so that *** a subsequent injury with increased actual disability may be compensated.' " *Freeman United*, 99 Ill. 2d at 493, quoting *Smith v. Industrial Accident Comm'n*, 44 Cal. 2d 364, 370, 282 P.2d 64, 68 (1955). We conclude it is equally permissible to penetrate that fiction when other cases of loss in the same accident result in "increased actual disability."

The loss of Carson's legs immediately entitled him to compensation under section 8(e)(18). Had that been the extent of his injuries, Carson likely would have retained at least some earning capacity. Carson may have even found further employment, as the worker in *Freeman United* had done before again suffering injury. However, Carson's earning capacity was further reduced when his workplace accident also caused the loss of his right arm and the loss of use of his left arm.

Those losses, above and beyond the specific case of loss of two members compensable by section 8(e)(18), would be left uncompensated if we were to accept Beelman's argument. If Beelman were correct, once a worker suffered a loss of both legs in an accident, *no* other specific losses, whether it be an arm, finger, eye or loss of hearing, would be compensable if the losses were all suffered in the same accident. Beelman urges that this result is required under this court's holding in *Arview v. Industrial Comm'n*, 415 Ill. 522 (1953).

The worker in *Arview* was injured by coming into contact with an overhead power line. The accident resulted in the amputation of both legs below the knee

and the amputation of the left arm at the shoulder joint. *Arview*, 415 Ill. at 524. In a previous accident the worker had already suffered a loss of sight in his right eye. Both accidents occurred while working for the same employer.

The Commission determined that the employer was responsible for paying total permanent disability benefits, including a lifetime pension. Both parties appealed. The employer argued that its liability was limited to compensation for the specific loss of one member. At that time, as now, the Act provided that when a worker who had previously suffered the loss of one enumerated member under section 8(e)(18) suffers the loss of a second member in a subsequent independent accident, that worker's employer is liable only for the specific loss of that second member. The employer was not responsible for the full lifetime pension that would normally be awarded for statutory total and permanent disability. Instead the Act provided that the special fund, now known as the Second Injury Fund, pays the difference between the amount payable by the employer under the specific loss schedule and the amount owed to the worker under statutory total and permanent disability under section 8(e)(18). Indeed, the employer in *Arview* argued that the worker was entitled to recover from the special fund for his injuries. *Arview*, 415 Ill. at 525. The worker asserted that he was entitled to both the lifetime pension and to compensation for the specific loss of each of his three amputated members. *Arview*, 415 Ill. at 525.

Although the *Arview* case is complicated by the worker's previous eye injury, the relevant question with respect to the instant case was whether the worker could choose to itemize his lost members as cases of specific loss, rather than limit his compensation to the statutory total and permanent disability lifetime benefit provided by section 8(e)(18).

In answering that question, we noted that it would be "specious reasoning" to conclude that the loss of multiple members would cause total and permanent disability to revert to specific losses. *Arview*, 415 Ill. at 534. We further stated that "[t]here is no provision in the act giving any employee, previously handicapped or otherwise, the right to elect whether he will claim compensation for the cumulative loss of members sustained in one accident, or claim statutory permanent and total disability." *Arview*, 415 Ill. at 534.

The conclusion reached in *Arview* was that an injured worker may not elect to bypass section 8(e)(18) in favor of itemizing his specific losses. To do so would "render meaningless both the provision relating to the sum payable for permanent and total disability and the provision defining the loss, or loss of use of two members, or the sight of both eyes as permanent total disability." *Arview*, 415 Ill. at 534-35.

In this case, Carson does not seek to bypass recovery under section 8(e)(18) and recover for three specific losses. Nor does he seek a double recovery for the loss of his legs under both section 8(e)(18) and section 8(e)(12) (820 ILCS 305/8(e)(12) (West 1994) (providing for 200 weeks of compensation for the loss of a leg)). Instead, Carson contends that he is entitled to recover under section 8(e)(18) for the loss of both legs, and recover under section 8(e)(10) for the loss of earning capacity as a result of the loss of each arm. This argument was not addressed by this court in *Arview*. In *Arview* we considered whether a worker was required to accept statutory total and permanent disability benefits or whether the employee could choose between claiming multiple specific losses *or* statutory total and permanent disability. Until *Freeman United,* when we recognized the nonliteral meaning of "total and permanent" disability under section 8(e)(18), those were the only two outcomes the court could have

adopted. Now, with the understanding that statutory total and permanent does not preclude recovery for losses which cause "actual increased disability," a different question is being asked in this case.

For this reason we conclude that the present case is distinguishable from *Arview*. Extending *Arview* to the present facts would run contrary to the Act's purpose of providing financial protection to workers for work-related injuries. As noted above, it would also be contrary to the rationale for our holding in *Freeman United*. Thus, we reiterate that the Act does not allow a worker to avoid section 8(e)(18) by itemizing specific losses that otherwise fall under that section. However, the Act does permit a worker to recover for the loss of two members under section 8(e)(18) as well as for any additional scheduled losses beyond the two losses compensated under that section. We therefore hold that the appellate court erred in setting aside the Commission's award under section 8(e)(10).

## B. *Claims Under the United States and Illinois Constitutions*

It has long been recognized that constitutional issues will be reviewed by this court only when the case may not be decided on nonconstitutional grounds. *Mulay v. Mulay*, 225 Ill. 2d 601, 611 (2007). Our conclusion that the Act itself allows awards under both section 8(e)(18) and section 8(e)(10) therefore obviates the need for this court to consider Carson's alternative constitutional arguments.

## II. Benefits Awarded Under Section 8(a)—Necessary and Reasonable Expenses

In awarding Carson benefits for his home computer system and for his automobile insurance premium, the Commission made factual determinations that each was a necessary and reasonable medical expense. As noted above, such factual determinations will not be overturned

unless they are against the manifest weight of the evidence.

We first address the Commission's award of computer-related expenses. Beelman argues that although voice-activated computers and similar devices have been awarded in other cases, the devices in those cases were used for assisting the employee in returning to work or as rehabilitative tools. Beelman suggests that because Carson uses his computer primarily for interacting with friends and family and not to aid a job search or participate in vocational rehabilitation, the award is contrary to law.

Section 8(a) of the Act provides that an employer shall pay for "medical, surgical and hospital services thereafter incurred, limited, however, to that which is reasonably required to cure or relieve from the effects of the accidental injury." That section continues, indicating that the employer "shall also pay for treatment, instruction, and training necessary for the physical, mental and vocational rehabilitation of the employee, including all maintenance costs and expenses incidental thereto."

The arbitrator here in part relied on evidence from Carson's primary physician, which indicated the computer system would be set up for therapeutic purposes. According to the arbitrator, the physician "emphasized the importance of this device as it relates to [Carson's] mental health and general wellbeing." Thus, the arbitrator concluded that "[Carson] has lost almost complete use of his body and is totally dependent on others for all movement and activity. The computer system provides his only vestige of autonomy. When so much is taken away, the psychological value of any remaining independence is obviously magnified."

Based on this record, we cannot say that the Commission's factual determination, that the computer-related expenses are necessary and reasonable medical

expenses, is against the manifest weight of the evidence. Accordingly, we confirm that part of the Commission's order awarding expenses for Carson's home computer system.

Next, regarding the van's insurance premium, Beelman urges that this court consider this question as a matter of law and as a question of first impression in Illinois. Beelman cites Iowa and Missouri as jurisdictions that have considered the issue and held that the insurance costs of a handicap modified vehicle are to be borne by the injured worker. Beelman asks this court to adopt a similar rule.

In *Manpower Temporary Services v. Sioson*, 529 N.W.2d 259 (Iowa 1995), a worker was injured, as in this case, to the point where she required the use of an electric wheelchair. The court concluded that the worker's need for the wheelchair also necessitated the use of a modified van for transportation. According to the court, to hold otherwise would have rendered her, "more than need be, a prisoner of her severe paralysis." *Sioson*, 529 N.W.2d at 264. The court therefore affirmed the commissioner's decision to award the expense of the vehicle. The court held, however, that the cost of the van's repair, fuel, title, license and insurance, were properly disallowed by the commissioner. The court reasoned that "it is exclusively up to [the worker] to set the extent of these purchases." *Sioson*, 529 N.W.2d at 264. With respect to insurance, the court concluded that the worker "will also control, for the most part, the extent of insurance coverage to be purchased." *Sioson*, 529 N.W.2d at 264.

The second case Beelman presents is a decision by a Missouri appellate court, which relies on *Sioson*. Like *Sioson*, in *Mickey v. City Wide Maintenance*, 996 S.W.2d 144 (Mo. App. 1999), the court was asked to determine whether the cost of a handicap modified van was compensable. The court concluded that the employer was

responsible, in part, for the purchase of and modifications to the van. *Mickey*, 996 S.W.2d at 152-53. The *Mickey* court also adopted the reasoning of the Iowa Supreme Court in denying compensation for the van's fuel, repair, title and insurance costs. *Mickey*, 996 S.W.2d at 153.

The *Sioson* and *Mickey* decisions cited by Beelman are distinguishable from the present case. The rationale for disallowing insurance, expressed in *Sioson* and adopted by the Missouri court in *Mickey*, was that the worker was responsible for determining to what extent the vehicle was insured. Neither court considered in any detail the issue raised in this case.

Here the Commission upheld the arbitrator's factual determination that the insurance premium was an expense "identifiably related to [Carson's] injury, as opposed to vehicle costs common to the general public." The arbitrator based her decision in part on the following exchange at the arbitration hearing:

"[Carson's Attorney, Mr. Glass] Q. The—many years ago the respondent provided a handicap modified van for you?

[Carson] A. Yes.

Q. And recently that had to be replaced with a newer model with different modifications to accommodate the current wheelchair technology and size, correct?

A. Yes.

Q. You pay the insurance on the vehicle?

A. Yes.

Q. And *** part of the insurance premium, is that part of the premium that is specifically the add-on for the handicap modifications as opposed to the regular vehicle coverage?

A. Yes.

THE ARBITRATOR: Just so that I'm clear, petitioner is looking for reimbursement only for the difference between what a regular car insurance would cost—

MR. GLASS: Right, just the premium that's attributable to the injury.

\* \* \*

THE ARBITRATOR: Rather than the whole premium?
MR. GLASS: Yes."

The record reflects that unlike the workers in *Sioson*
and *Mickey*, Carson did not seek expenses for fuel, repair,
or title of the vehicle. Nor did Carson seek an award
which covered the entirety of his van's insurance
premium. Instead, Carson sought only the difference
between what an owner of an unmodified van would pay
and what the insurance company charged for insuring
the modifications to Carson's van that his disability
requires. Based on the record, we cannot say that the
Commission's factual determination that the insurance
premium is a necessary and reasonable medical expense
is against the manifest weight of the evidence. Accord-
ingly, we confirm that part of the Commission's order
awarding expenses for Carson's partial automobile insur-
ance premium.

## CONCLUSION

For the foregoing reasons, we reverse the appellate
court judgment insofar as it set aside Carson's award
under section 8(e)(10), and reinstate the Commission's
award. In all other respects, the appellate court judg-
ment is affirmed.

*Appellate court judgment affirmed in part*
*and reversed in part;*
*award reinstated.*