# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Nettles v. Allstate Insurance Co.*, 2012 IL App (1st) 102247

---

| | |
|---|---|
| Appellate Court Caption | SHELENE A. NETTLES and ED CZARNECKI, Individually, and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants and Cross-Appellees, v. ALLSTATE INSURANCE COMPANY, an Illinois Corporation, ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, an Illinois Corporation, and ALLSTATE INDEMNITY COMPANY, an Illinois Corporation, Defendants-Appellees and Cross-Appellants. |
| District & No. | First District, First Division<br>Docket No. 1-10-2247 |
| Filed | May 29, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a class action by insurance claims adjusters alleging that they were entitled to overtime wages, the trial court properly entered judgment for defendants based on the determination that plaintiffs' employer met its burden of establishing that plaintiffs' primary job duties came within the provision of the Illinois Minimum Wage Law exempting employer from paying overtime wages to employees working in a *bona fide* executive, administrative or professional capacity. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 02-CH-14426; the Hon. Kathleen M. Pantle, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | William J. Harte Ltd. (William J. Harte and Joan M. Mannix, of counsel), Walner Law Firm, Ltd. (Lawrence Walner and Michael S. Hilicki, of counsel), and Laurie E. Leader, of Chicago-Kent College of Law, all of Chicago, and Gatti, Gatti, Maier, Krueger, Sayer & Associates, of Salem, Oregon (Daniel Gatti, of counsel), for appellants. |
| | Kirkland & Ellis LLP, of Chicago (Richard C. Godfrey, P.C., Donna M. Welch, P.C., Kathleen A. Ehrhart, and Amy E. Crawford, of counsel), for appellees. |
| | Lisa Madigan, Attorney General, of Chicago (Michael Scodro, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), *amicus curiae*. |
| Panel | JUSTICE KARNEZIS delivered the judgment of the court, with opinion. Presiding Justice Hoffman and Justice Rochford concurred in the judgment and opinion. |

## OPINION

¶ 1      This case presents the question of whether insurance claims adjusters are entitled to overtime. We answer the question in the negative, as did the trial court. Plaintiffs-appellants and cross-appellees Shelene A. Nettles and Ed Czarnecki, individually, and on behalf of all others similarly situated (collectively plaintiffs, unless otherwise noted), appeal from the trial court's order in favor of defendants-appellees and cross-appellants Allstate Insurance Company, an Illinois corporation, Allstate Property and Casualty Insurance Company, an Illinois corporation, and Allstate Indemnity Company, an Illinois corporation (collectively, Allstate).[1] On appeal, plaintiffs contend that they should receive overtime wages because Allstate did not prove that plaintiffs came within the administrative exemption. For the following reasons, we affirm the trial court's order in favor of Allstate.

---

[1]Allstate filed a notice of conditional cross-appeal regarding the trial court's order certifying the class. However, Allstate neither argued the cross-appeal in its response brief nor filed an additional brief.

¶ 2                             Background

¶ 3      Plaintiffs are current or former insurance claims adjusters employed by Allstate. Nettles, a former Allstate claims adjuster in the state of Washington, filed a class action suit against Allstate in the circuit court of Cook County in 2002. Nettles asserted class claims on her behalf under the Washington Minimum Wage Act (Wash. Rev. Code Ann. § 49.46.005 *et seq.* (West 2002)), and on behalf of other class members under the minimum wage laws of the various states in which they worked. In 2004, Nettles filed a third amended class action complaint in which she joined Czarnecki, a former Allstate claims adjuster in Illinois, as a named plaintiff. Czarnecki asserted a similar claim under Illinois's Minimum Wage Law (820 ILCS 105/4a(1) (West 2002)). The class was certified in March 2006, with Czarnecki as the lone class representative. This resulted in two independent, but joined, claims for trial: Czarnecki and the class members' claims against Allstate for violations of Illinois's Minimum Wage Law, and Nettles' individual claim against Allstate for violations of the Washington Minimum Wage Act. The case was bifurcated in order to defer discovery on the issue of damages, and it proceeded to trial on the issue of liability.

¶ 4                Federal and Illinois Overtime Wage Laws

¶ 5      The Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 201 *et seq.* (2006)) was enacted by Congress to ensure the general well-being of workers and to eliminate labor conditions "detrimental to the maintenance of the minimum standard of living." 29 U.S.C. § 202(a) (2006). The FLSA provides that an employer must pay an employee overtime wages if that employee works more than 40 hours a week. 29 U.S.C. § 207(a)(1) (2006). Illinois's Minimum Wage Law (820 ILCS 105/4a(1) (West 2010)) provides the same.

¶ 6      However, section 4a(2) of Illinois's Minimum Wage Law contains numerous exceptions. The exception contained in section 4a(2)(E) concerning administrative employees is relevant here. In 2002, section 4a(2)(E) excluded:

> "[a]ny employee employed in a bona fide executive, administrative or professional capacity *** as defined by or covered by the Federal Fair Labor Standards Act of 1938, as now or hereafter amended." 820 ILCS 105/4a(2)(E) (West 2002).

¶ 7      The Code of Federal Regulations defined an employee employed in a *bona fide* administrative capacity as any employee whose primary job duties: (1) consist of the "performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers"; and (2) "includes work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.2(a)(1), (e)(2) (2003).

¶ 8                              Analysis

¶ 9                     Standard of Review

¶ 10     At trial, Allstate had the burden of proving by a preponderance of the evidence that plaintiffs were exempt from receiving overtime wages. *Corning Glass Works v. Brennan*,

417 U.S. 188, 196-97 (1974). Exemptions are to be construed narrowly against the employer. *Avery v. City of Talladega*, 24 F.3d 1337, 1340 (11th Cir. 1994). Determining the duties encompassed by an employee's position is a question of fact; determining the appropriate FLSA classification is a question of law. *Roe-Midgett v. CC Services, Inc.*, 512 F.3d 865, 869 (7th Cir. 2008). For mixed questions of fact and law, or where a case involves an examination of the legal effect of a given set of facts, the court must apply a "clearly erroneous" standard of review. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998).

¶ 11                             Identifying Plaintiffs' Primary Job Duties

¶ 12       On appeal, plaintiffs first contend that the trial court failed to identify their "actual" primary job duties. Plaintiffs take issue with the trial court's characterization of the issues at trial set forth in its written order. The court's written order stated that one of the issues in the case was, "Do the assigned duties of auto and casualty adjusters in Illinois, under the policies, procedures and guidelines applicable to the class as a whole, fall within the administrative exemption under [Illinois's Minimum Wage Law]?" Plaintiffs argue that the trial court should have focused on plaintiffs' "actual" duties, rather than their "assigned" duties.

¶ 13       Here, the trial court's order consisted of 66 pages. It included 36 pages of factual findings and 20 pages of legal conclusions. The order set forth the job duties of Allstate's casualty and auto adjusters in great detail. It first described the job of a casualty adjuster and the various types of casualty adjusters there were depending upon whether they handled first-party casualty claims or third-party casualty claims. It then described the job of an auto adjuster, noting that there were four types of auto adjusters, which could be further broken down into subcategories. The order also described the environments where casualty and auto adjusters performed their work (*e.g.*, traditional offices, market claim offices, drive-in facilities, and field inspection centers). The order additionally determined that casualty adjusters' primary duties included: (1) setting and adjusting the reserve for each claim; (2) investigating and determining coverage; (3) determining liability in multiparty accidents; (4) evaluating special and general damages; and (5) negotiating with claimants, attorneys, and/or other insurance companies to settle claims. The order further determined that auto adjusters' primary duties included: (1) estimating damages; (2) deciding whether a vehicle was a total loss, including determining the condition of the vehicle as it affects the vehicle's cash value; (3) negotiating with insureds, claimants, and body shops; and (4) settling claims, including the issuance of checks within their personal authority level. We find that the trial court identified plaintiffs' "actual" primary job duties.

¶ 14            Work Directly Related to Allstate's General Business Operations

¶ 15       Plaintiffs next contend that Allstate failed to prove that plaintiffs' primary job duties consisted of the performance of office or nonmanual work directly related to the management policies or general business operations of Allstate or Allstate's customers.

¶ 16       Plaintiffs' brief is silent as to the "office or nonmanual work" requirement. Therefore,

they have forfeited any argument with respect to that part of the issue. See Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008).

¶ 17   The Code of Federal Regulations defined the phrase "directly related to management policies or general business operations of his employer or his employer's customers" as meaning "those types of activities relating to the administrative operations of a business as distinguished from 'production' or, in a retail or service establishment, 'sales' work." 29 C.F.R. § 541.205(a) (2003). The Code of Federal Regulations further provided that the above phrase "limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers." 29 C.F.R. § 541.205(a) (2003). An employee's job title is not controlling; courts instead must engage in a case-by-case analysis of the employee's duties and responsibilities. *Roe-Midgett*, 512 F.3d at 870.

¶ 18   Plaintiffs specifically argue that they were engaged in "production" work, which was not administrative in nature and was not of substantial importance to the management or operations of Allstate and that the trial court erroneously relied on their job titles rather than their job duties.

¶ 19   The trial court found that plaintiffs' primary job duties consisted of adjusting claims. The court further noted that there was a "unanimous chorus of federal case law" holding that the claims adjusting function of the insurance business was administrative in nature and was directly related to the insurance companies' management policies and business operations.

¶ 20   Here, contrary to plaintiffs' contentions, plaintiffs' primary job duties did not involve "production" work. Plaintiffs' primary job duties involved adjusting claims, which included administrative functions such as negotiating with various parties and representing Allstate. Despite plaintiffs' rhetoric that "[e]very day, all day, the adjusters process a never-ending assembly line of claims," plaintiffs did not work on a production line or produce anything; rather, plaintiffs provided a service. Also contrary to plaintiffs' contentions, plaintiffs' primary job duties were of substantial importance to Allstate's business. Allstate's insurance adjusters investigate and determine coverage of claims, negotiate with numerous parties to settle claims, and legally bind Allstate to settlement agreements. This is not the type of work that would be considered of little importance to Allstate's business. Rather, adjusting claims is one of the core services of Allstate's business.

¶ 21   Further, the trial court's order did not rely solely on plaintiffs' job titles rather than their specific job duties. The court's order noted that Allstate's casualty adjusters "represent the company in determining and adjusting reserves, determining coverage, detecting fraud, gathering evidence, assessing credibility, determining liability, evaluating damages, making a recommendation on claims above their established authority, negotiating with claimants, settling claims, interacting with customers, claimants, attorneys, and other insurance companies, and, in the case of represented casualty adjusters, negotiating with attorneys and collaborating with the company's counsel if the case results in litigation." The court's order also noted that Allstate's auto adjusters "estimate the damage to a vehicle and determine whether it is related to the covered loss or a prior loss, determine whether a vehicle is a total loss, negotiate with claimants and body shops, settle claims, and make recommendations on

claims above their settlement authority." The order further noted that auto adjusters' duties may also include "determining coverage and detecting fraud." The trial court did not solely rely on plaintiffs' job titles rather than their job duties. The trial court's determination that Allstate met its burden of establishing that plaintiffs' primary job duties came within the first part of the administrative exemption is not clearly erroneous.

¶ 22                      Work Requiring Discretion and Independent Judgment

¶ 23     Plaintiffs next contend that Allstate failed to prove that plaintiffs' primary job duties included work requiring the exercise of discretion and independent judgment. Plaintiffs argue that their primary job duties were "skill" based rather than discretionary. Plaintiffs maintain that because they were only given limited authority to settle claims and because that authority was further limited by various computer programs and software, they did not use discretion or independent judgment to settle claims.

¶ 24     The Code of Federal Regulations defined the exercise of discretion and independent judgment as "the comparison and evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a) (2003). The Code further provided that the phrase "implies" that "the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." 29 C.F.R. § 541.207(a) (2003).

¶ 25     The trial court determined that plaintiffs' primary job duties required the exercise of discretion and independent judgment because with respect to Allstate's casualty adjusters, they made final decisions with respect to setting and adjusting reserves; determining coverage; determining liability; evaluating damages; and negotiating with claimants, attorneys, and/or other insurance companies to settle claims within their personal authority. With respect to Allstate's auto adjusters, the trial court found that they made final, binding decisions on the estimate and payment of all claims within their personal authority level; made judgments about whether to repair or replace a part; what type of parts to use; how to condition the vehicle, or whether the vehicle was a total loss.

¶ 26     Here, as the trial court found, plaintiffs' primary job duties were discretionary and required independent judgment. Plaintiffs job duties were not synonymous with data entry clerks. Although their job duties were limited by certain computer programs and there were monetary limits for which they could settle claims, these limitations did not dispense with their authority or power to make independent decisions. Plaintiffs were given authority to settle claims within certain limits without input or approval from their supervisors. Settling claims is considered a "matter of significance" and is important to Allstate's business. The trial court's determination that Allstate met its burden of establishing that plaintiffs' primary job duties came within the second part of the administrative exemption is not clearly erroneous.

¶ 27     This case is similar to *Roe-Midgett v. CC Services, Inc.*, 512 F.3d 865 (7th Cir. 2008), where the court held that the defendant's employees who were automobile insurance claims adjusters came within the administrative exemption and were not entitled to receive overtime wages. The court first found that the plaintiffs' job duties consisted of work directly related

-6-

to the general business operations of the employer or employer's customers because the plaintiffs played a significant role in the claims adjusting service the employer provided to its insurance carrier clients; were at the "front lines" of the employer's auto claims adjusting operation; and spent most of their time in the field and represented the "face" of the employer to the claimants and mechanics with whom they interacted. *Roe-Midgett*, 512 F.3d at 871. The court further determined that the plaintiffs' job duties of investigating, estimating, and ultimately settling auto damage claims were "obviously 'work of substantial importance' " to the employer's business operations and were the core service it provided to its customers. *Roe-Midgett*, 512 F.3d at 871. The court then found that the plaintiffs exercised discretion and independent judgment when they inspected vehicles for damage and verified whether the actual damage was consistent with the claimed damage; evaluated whether the claimed damage was likely preexisting, inconsistent with the alleged cause, or otherwise suspicious; and considered the presence or absence of fraud. *Roe-Midgett*, 512 F.3d at 874. The court further noted that its conclusions were consistent with numerous other opinions where a claims-processing employee with similar responsibilities to the plaintiffs' responsibilities came within the administrative exemption and were not entitled to receive overtime wages. *Roe-Midgett*, 512 F.3d at 875 (citing *In re Farmers Insurance Exchange, Claims Representatives' Overtime Pay Litigation*, 481 F.3d 1119 (9th Cir. 2007), *Cheatham v. Allstate Insurance Co.*, 465 F.3d 578 (5th Cir. 2006), *Jastremski v. Safeco Insurance Cos.*, 243 F. Supp. 2d 743 (N.D. Ohio 2003), and *Palacio v. Progressive Insurance Co.*, 244 F. Supp. 2d 1040 (C.D. Cal. 2002)).

¶ 28   Similarly here, plaintiffs' job duties encompassed many of the same job duties as the plaintiffs in *Roe-Midgett* that were determined to come within the administrative exemption. Plaintiffs' casualty and auto claims adjusting duties generally included investigating claims, determining coverage, estimating damages, negotiating with various parties and settling claims. As the court found in *Roe-Midgett*, we also find that these are the types of duties that come within the administrative exemption, thereby exempting plaintiffs from receiving overtime wages.

¶ 29   Additionally, plaintiffs note that the trial court erred in considering the opinions of Allstate's expert, Dr. David Lewin. Plaintiffs argue that Dr. Lewin's testimony should have been disregarded because his opinions were irrelevant and unreliable.

¶ 30   Here, plaintiffs do not argue that Dr. Lewin's testimony was inadmissible. Plaintiffs only argue that the trial court should not have "considered" his opinions. However, plaintiffs do not cite to any specific part of the trial court's 66-page order regarding any possible error in the court's consideration of Dr. Lewin's testimony. The issue is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008).


¶ 31          Illinois's 2004 Amendment to Illinois's Minimum Wage Law

¶ 32   Lastly, plaintiffs contend that for claims after April 2, 2004, the date that section 4a(2)(E) of Illinois's Minimum Wage Law was amended, the trial court should have applied a different test to determine whether plaintiffs were exempt from overtime wages. In 2004, the Illinois legislature amended section 4a(2)(E) to exempt from overtime:

"Any employee employed in a bona fide executive, administrative or professional capacity *** as defined by or covered by the Federal Fair Labor Standards Act of 1938 and the rules adopted under that Act, as both exist on March 30, 2003, but compensated at the amount of salary specified in subsections (a) and (b) of Section 541.600 of Title 29 of the Code of Federal Regulations as proposed in the Federal Register on March 31, 2003 or a greater amount of salary as may be adopted by the United States Department of Labor." Pub. Act 93-672 (eff. Apr. 2, 2004) (amending 820 ILCS 105/4a(2)(E) (West 2004)).

¶ 33    On March 30, 2003, section 541.2 of the Code of Federal Regulations provided that if an employee earned a salary of "not less than $155 per week," and satisfied numerous additional factors, he or she would be exempt from overtime wages. Those certain additional factors were referred to as the "long test." If an employee earned a salary of "not less than $250 per week" and satisfied only two additional factors, he or she would be exempt from overtime wages. Those two additional factors were referred to as the "short test."

¶ 34    In other words, if an employee earned less than $155 a week, the employee would never be exempt and would always receive overtime. If an employee earned $155 a week but less than $250 a week, the employee would be exempt from overtime if the employer could prove that the employee's duties satisfied the requirements of the long test. If an employee earned $250 or more a week, the employee would be exempt from overtime if the employer could prove that the employee's duties satisfied the requirements of the short test.

¶ 35    By amending section 4a(2)(E), Illinois adopted the definitions and rules in the FLSA as they existed on March 30, 2003, for determining exempt employees, but adopted them using the compensation stated in section 541.600 or an amount later adopted by the Department of Labor. Section 541.600 provides that to qualify as an exempt employee, the employee must be compensated at a rate of not less than $455 a week. 29 C.F.R. § 541.600 (2004). The question raised here is the effect of the legislature's actions in following the 2003 definitions and rules of the FLSA, but adopting the $455 compensation rate to qualify for the exemption.

¶ 36    We note that plaintiffs did not raise the issue that a different test should apply to part of plaintiffs' claim until after trial, albeit before the court's judgment order. Plaintiffs first raised the issue in their proposed conclusions of law they submitted to the court. Allstate filed a motion to strike, which the trial court granted. Despite the unfairness to Allstate inherent in plaintiffs' change in their playbook at the end of the game, the trial court nevertheless addressed the issue, finding that the $455 amount elevated the statutory minimum to qualify for the exemption while keeping the rest of the regulations the same. The trial court further found that the amendment effectively eliminated the long test and kept the short test because the minimum level to qualify for the exemption was higher than the threshold for the application of the short test. Therefore, the trial court applied the short test to plaintiffs' claims. Although plaintiffs arguably forfeited this issue by not raising it at trial, we will address it. We agree with the trial court that the short test applied to plaintiffs' claims.

¶ 37    The goal of statutory interpretation is to ascertain the intent of the legislature. *Brucker v. Mercola*, 227 Ill. 2d 502, 513 (2007). The best indication of legislative intent is the

statutory language, given its plain and ordinary meaning. *Beelman Trucking v. Illinois Workers' Compensation Comm'n*, 233 Ill. 2d 364, 370 (2009). If the statutory language is clear and unambiguous, there is no need to resort to other aids of construction. *Brucker*, 227 Ill. 2d at 513. Statutory interpretation is a question of law, which we review *de novo*. *Solon v. Midwest Medical Records Ass'n.*, 236 Ill. 2d 433, 439 (2010).

¶ 38    The statutory language of section 4a(2)(E) is clear and unambiguous. In amending the section, the Illinois legislature sought to follow the federal rules and regulations exactly as they existed on March 30, 2003, except at a salary amount designated by the Department of Labor. The salary amount adopted by the Department of Labor to qualify as an exempt employee is an employee earning not less than $455 a week. Plaintiffs agree that they earned $455 or more a week. Using that salary amount ($455 or more a week), we now look to the rules and regulations as they existed on March 30, 2003. As stated above, those rules included the long test and the short test and their respective salary thresholds of not less than $155 a week but less than $250 a week, and $250 or more a week. According to section 541.2 as it existed on March 30, 2003, an employee who earned a salary of $250 or more a week would be exempt from overtime if the employer could prove that the employee's duties satisfied the requirements of the short test. Since plaintiffs earned $455 or more a week, the short test applies to their claims. As Allstate simply states in its brief, " [i]f the short test applies to all employees earning over $250 per week, *a fortiori*, it must apply to Illinois workers earning $455 or more per week." Further, as the trial court stated in its order, "[t]hough this amendment effectively eliminates the long test, the remedy lies with the legislature, not the courts."

¶ 39    We are not persuaded by both plaintiffs' and the Attorney General's argument that the new "not less than $455 per week" minimum replaced the "not less than $155 per week" minimum in section 541.2 as it existed on March 30, 2003. Doing so would be rewriting section 541.2. The legislature sought to preserve the federal rules and regulations as they existed on March 30, 2003. Rewriting section 541.2 to change the minimum salary threshold would be improper. Our above application of the Department of Labor's latest salary specification to section 541.2 as it existed on March 30, 2003, gives the Illinois amendment its plain and ordinary meaning. Therefore, we find that the trial court's application of the short test to plaintiffs' claims was proper.

¶ 40                                                Conclusion

¶ 41    For the aforementioned reasons, we affirm the judgment of the trial court in favor of Allstate.

¶ 42    Affirmed.